IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | 1:08-cr-223-WSD-2 |
| BLAS ALEMAN, | |
| Defendant. | |

**OPINION AND ORDER**

This matter is before the Court on Defendant Blas Aleman's ("Aleman") Objection to Order Concerning Deposition of Dr. Leocadio Carbajal Abonsa ("Dr. Carbajal") [295] ("Objections").

**I.   BACKGROUND**

In July 2016, Aleman moved, pursuant to Federal Rule of Criminal Procedure 15, for leave to take pre-trial depositions of various alibi witnesses in Mexico. ([246], [259]-[261]). The purpose of the depositions was to obtain information concerning Aleman's whereabouts at the times the conduct alleged in the indictment occurred. Magistrate Judge Catherine M. Salinas granted the motion, and authorized the deposition of various individuals, including Dr. Carbajal, a medical doctor Aleman contends treated him in Mexico during the relevant time period. ([262], [264]). Because of safety concerns in the area of

Mexico in which the deponents reside, the Magistrate Judge required that the depositions be conducted in Mexico City, which is approximately a six-hour drive from the town in which the witnesses live.  (Id.).

On January 10, 2017, defense counsel and counsel for the Government traveled to Mexico City and deposed five witnesses.  Dr. Carbajal did not appear for his deposition.  Dr. Carbajal sent a written statement, dated January 6, 2017, indicating that health issues precluded him from traveling to Mexico City for the deposition.  ([287.1] (the "January 2017 Statement")).  The statement also indicated that he had recently undergone surgery and was on post-surgery bed rest for ninety (90) days.  (Id.).

On January 29, 2017, Aleman filed his Second Motion to Take Deposition of Dr. Carbajal [287] ("Second Carbajal Motion"), again seeking permission to take Dr. Carbajal's deposition, this time in the town of Cutzamala de Pinzon, in Guerrero, Mexico.  ([287] at 5).  Aleman argues that Dr. Carbajal's testimony is particularly crucial to Aleman's defense because of their doctor-patient relationship and the fact that Dr. Carbajal prescribed medication for Aleman's gastritis in March and April 2008.  (Id. at 2). Aleman seeks to obtain evidence regarding Dr. Carbajal's medical treatment of Aleman during the relevant period,

and he seeks to authenticate certain prescriptions that he believes Dr. Carbajal issued to Aleman.  (Id.).

On February 1, 2017, the Magistrate Judge held a telephone conference with counsel to discuss the motion.  During the conference, defense counsel reiterated that, despite the Magistrate Judge's earlier ruling regarding the location of the deposition, he seeks to take the deposition in Cutzamala de Pinzon.  The Magistrate Judge stated that she would not order a deposition there due to the safety concerns she previously articulated.  The Magistrate Judge also stated that, before requiring the Government to respond to Aleman's motion, she required assurances that Dr. Carbajal would cooperate in setting up and attending a deposition, and she required information regarding whether Dr. Carbajal had treated Aleman in person during the relevant time period.  The Magistrate Judge allowed defense counsel two weeks to provide the required information.

On February 11, 2017, defense counsel notified the Magistrate Judge that he had been unable to obtain any of the information that the Magistrate Judge required.  Defense counsel stated that he had made inquiries to Dr. Carbajal but had received no response.

On February 13, 2017, the Magistrate Judge issued her Order [294] denying Aleman's Second Carbajal Motion.  The Magistrate Judge found that Aleman

failed to meet his burden to show that exceptional circumstances warrant deposing Dr. Carbajal, including because he did not present any evidence to show that Dr. Carbajal provided Aleman in-person treatment during the relevant time period and because Aleman failed to present any assurances that Dr. Carbajal would submit to questioning even if the Court granted permission to take his deposition in Guerrero.  The Magistrate Judge noted also that Dr. Carbajal's proposed testimony would be cumulative of the testimony of those deposed in January 2017.

On February 14, 2017, Aleman filed his Objections.  Aleman argues that there is, in fact, evidence that Dr. Carbajal personally saw Aleman and provided in-person treatment to him during the relevant time period.  He points to an unsworn written statement provided by Dr. Carbajal several months earlier, in which Dr. Carbajal states:

> I have treated Blas Aleman Castillo . . . for sinus problems and gastritis.  I first saw Blas Aleman sometime in 2006.  I saw Blas frequently in 2008 for sinusitis and gastritis. I gave him prescriptions for these ailments. . . I gave him those prescriptions in person, in my office . . . .

([254.4] (the "August 2016 Statement")).  Aleman also argues that Dr. Carbajal's surgery and subsequent bed rest are reasonable explanations for Dr. Carbajal's inability to attend his previously-scheduled deposition, and Aleman objects to the Magistrate Judge's characterization that Dr. Carbajal is "not currently cooperating

with the defense." The Government contends that, even if Dr. Carbajal's statement is evidence that he could provide exculpatory testimony at a deposition, the testimony is cumulative of the five other depositions taken in Mexico City.

**II.   DISCUSSION**

    A.    <u>Legal Standard</u>

Under Rule 59(a) of the Federal Rules of Criminal Procedure, a magistrate judge may rule on any matter referred by a district judge that does not dispose of a charge or defense. If any party files objections to a magistrate judge's order on nondispositive matters, "the district judge must consider timely objections and modify or set aside any part of the order that is contrary to law or clearly erroneous." Fed. R. Crim. P. 59(a). This is a deferential standard of review. <u>United States v. Wimbley</u>, No. 11-0019-WS, 2011 WL 3204539, at *2 (S.D. Ala. July 27, 2011). For purposes of this rule, "a finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." <u>In re of Grand Jury Empaneled April 24, 2008</u>, 601 F. Supp. 2d 600, 603 (D.N.J.2008) (citation omitted); <u>see also</u> <u>Pigott v. Sanibel Dev., LLC</u>, No. 07-0083-WS, 2008 WL 2937804, at *5 (S.D. Ala. July 23, 2008) ("clearly erroneous" test is satisfied only if district judge finds "that the Magistrate Judge abused his

discretion or . . . the Court is left with a definite and firm conviction that a mistake has been made" (citations omitted)).  "A ruling is contrary to law when the magistrate judge has misinterpreted or misapplied the applicable law."  Grand Jury, 601 F. Supp. 2d at 603 (citation omitted); see also Pigott, 2008 WL 2937804, at *5 ("An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure."  (citations omitted)).

> B. Analysis

A district court may grant a party's request to depose a prospective witness "because of exceptional circumstances and in the interest of justice."  Fed. R. Crim. P. 15(a)(1).  The moving party bears the burden of showing that exceptional circumstances exist to warrant the deposition.  United States v. Carter, 776 F.3d 1309, 1325 (11th Cir. 2015) (citing United States v. Drogoul, 1 F.3d 1546, 1552 (11th Cir. 1993)).  Three factors guide the exceptional circumstances analysis: whether (1) the witness is unavailable to testify at trial; (2) injustice will result because testimony material to the movant's case will be absent; and (3) countervailing factors render taking the deposition unjust to the nonmoving party.  United States v. Ramos, 45 F.3d 1519, 1522-23 (11th Cir. 1995).  "The principal consideration guiding whether the absence of a particular witness's testimony would produce injustice is the materiality of that testimony to the case."

6

Drogoul, 1 F.3d at 1552. The Eleventh Circuit has "reversed a district court's denial of a motion for foreign witness depositions where the expected testimony was 'highly material to the case,' going to 'the very heart of the government's allegations,' and the countervailing concerns were premature and speculative." Carter, 776 F.3d at 1325-26 (quoting Drogoul, 1 F.3d at 1553-56).

        1.       Unavailability

The Magistrate Judge determined that Aleman failed to meet his burden to show exceptional circumstances exist to warrant his deposing Dr. Carbajal. Applying the three-factor Ramos test, the Magistrate Judge determined that Aleman satisfied the first factor by showing that Dr. Carbajal is unavailable to testify at trial, either due to his unwillingness to testify or to his health condition. The parties do not dispute this determination, and the Court finds it is not contrary to law or clearly erroneous. See Fed. R. Crim. P. 59(a).

        2.       Materiality

Turning to the second element of the Ramos test, the Magistrate Judge found that Aleman failed to show the materiality of Dr. Carbajal's testimony because (1) he did not present any evidence to show that Dr. Carbajal personally saw Aleman and provided in-person treatment to him during the relevant time period and (2) the expected testimony would be cumulative in light of the five other alibi

witnesses, including his barber and a health clinic worker.  Aleman objects to this finding, pointing to Dr. Carbajal's August 2016 Statement.[1]

The Government argues that Aleman fails to meet the second element of the Ramos test because, even if Dr. Carbajal is expected to provide an alibi, the testimony would be cumulative of Aleman's five other alibi witnesses.  Where the deposition testimony sought under Rule 15(a) is cumulative of other testimony, a court does not abuse its discretion by denying the Rule 15(a) motion.  See Carter, 776 F.3d at 1326 (district court did not abuse discretion by excluding deposition testimony of defendant's good deeds in the community, because other witnesses, including some of defendants' victims, already testified as to his good deeds); United States v. Cannon, 475 F.3d 1013, 1022 (8th Cir. 2007) (no error in denying Rule 15(a) motion, finding the witness's "testimony . . . was not material.  [It] was cumulative"); United States v. Gragg, 145 F.3d 1334, 1998 WL 2469019, at *5 (6th Cir. May 7, 1998) (deponent's testimony was not material because it was cumulative); United States v. Hajbeh, 284 F. Supp. 2d 390, 384-85 (E.D. Va. 2003)

---

[1]   The Court notes that Aleman did not cite to this unsworn statement in his Second Carbajal Motion.  The Magistrate Judge was thus not notified of the August 2016 Statement, which was attached to a motion filed several months earlier.  The August 2016 Statement, besides being unsworn, is unspecific.  Dr. Carbajal stated generally that he treated Aleman in 2008 and gave him prescriptions.  He does not otherwise account for Aleman during the period alleged in the indictment.

(applying test for materiality under Brady v. Maryland, 373 U.S. 83 (1963), and holding that a defendant can establish materiality under Rule 15(a) by showing that the testimony would be (1) exculpatory and (2) not merely corroborative or cumulative of other evidence).

The Government provides summaries of the January 10, 2017, depositions taken in Mexico City, which the Court describes below:

1. Martha Beiza: Ms. Beiza lived with Aleman throughout 2008 and saw him every day that year. Following their time as housemates, Ms. Beiza had a romantic relationship with Aleman that ended prior to Aleman's engagement and marriage to Sara Cruz Garcia.

2. Fortino Granados: Mr. Granados was Aleman's barber and saw him approximately every two weeks for several years, including all of 2008. Mr. Granados testified that Aleman never left the area of Cutzamala de Pinzon, Guerrero in 2008.

3. Sara Cruz Garcia: Ms. Garcia worked at Aleman's parents' house in Cutzamala de Pinzon on a daily basis in 2008. Ms. Garcia testified that she saw Aleman at his parents' house every day that year, and she recalled always seeing Defendant eating there. Ms. Garcia and Aleman married in 2012. Ms. Garcia also testified that she recovered various exhibits from Aleman's house, including a receipt for a water bill dated May 2008 and several power bills from 2007 addressed to Aleman.[2]

---

[2] The Government objected to the admission of these documents as hearsay.

    4.    Alejandro Popoca: Mr. Popoca is friends with Aleman's parents. He testified that he farmed a piece of land with Aleman from 2007 through 2014 and he saw Aleman throughout 2008.

    5.    Eleazar Venancia: Mr. Venancia works at a health clinic that provides medical treatment to residents in the area of Cutzamala de Pinzon. Mr. Venancia remembered first meeting Aleman at the clinic in or around early 2008, and he testified that he saw Aleman at the health clinic every day from March through May 2008.

([299] at 4). Aleman described this testimony as "compelling" and "very persuasive[.]" ([287] at 2; [288] at 16). The Government expects that Aleman's parents will testify at trial that he was present in Mexico during the alleged conspiracy. (Id. at 4 n.3 (citing [264] at 3)).

Aleman argues the testimony he seeks is not cumulative, because "[m]ultiple witnesses are important to" establish an alibi defense. (See [302] at 1). He contends that the Government will "argue that the jury should disregard the testimony of one or two or five witnesses as having gotten together to stretch the truth on Aleman's behalf because they're friends or relations and want to help him. Or . . . that those witness's [sic] recollection should be disregarded because the long passage of time makes their testimony questionable." (Id.). He claims that the addition of more alibi witnesses will lead jurors to "conclude that the witnesses can't all be shading the truth." (Id. at 2 (emphasis in original)). Aleman also

10

argues that Dr. Carbajal will be more credible than the other witnesses because he is a physician, and doctors are well-regarded and presumptively reliable. (Id.). Finally, Aleman argues that only Dr. Carbajal can authenticate the prescriptions that he wrote for Aleman on three different occasions during the two-month period at issue in this case. (Id. at 2-3).

Aleman's arguments are unconvincing. Though additional alibi witnesses certainly can bolster an alibi defense, it is difficult to see how Dr. Carbajal's testimony—the sixth alibi witness testimony sought, excluding that of Aleman's parents—is not cumulative. Aleman claims Dr. Carbajal, as a doctor, is inherently more credible than the other witnesses, including because he has a "dispassionate" relationship with Aleman. Though Dr. Carbajal may be perceived as more credible than other witnesses, this factor alone is not so great as to establish the materiality of his testimony. His credibility as a doctor with a "dispassionate" relationship is undermined by the fact that he is the Aleman family doctor and has known Aleman for over a decade. The testimony of Mr. Venancia, the health worker who met Aleman in 2008, appears to be of equal, if not greater, value to Aleman's "dispassionate" argument, including because, unlike Aleman and Dr. Carbajal, the two met shortly in a professional setting and do not appear to have a continuing relationship. Aleman's argument that Dr. Carbajal's testimony is unique because

11

he can authenticate prescriptions he wrote for Aleman is also unconvincing. Prescriptions are not necessarily handed to a patient in person—they may be emailed or otherwise sent to a patient remotely. That Dr. Carbajal would testify that he personally handed the prescriptions to Aleman on three different occasions merely corroborates, and is cumulative of, the ample testimony from other witnesses that Aleman was in Cutzamala de Pinzon during the relevant time period. The Court finds that the Magistrate Judge's determination that Aleman failed to meet his burden regarding the second Ramos factor was not contrary to law or clearly erroneous.

### 3. Countervailing Factors

As to the final Ramos factor, the Magistrate Judge found that countervailing factors would render taking the deposition unjust to the Government, including because (1) the Court has not received any assurance that Dr. Carbajal would submit to questioning even if the Court granted permission to take his deposition in Guerrero, and, given that he failed to appear at one deposition and is not currently cooperating with the defense, further efforts to depose him may be in vain; and (2) if legal process is required to obtain the testimony, the process may take a year or more to execute, which delay would be unjust to the Government. Aleman argues that the Magistrate Judge's characterizations that Dr. Carbajal failed to

show up for his deposition and is currently uncooperative are unfair, because he had a major surgery, explained his reason for not appearing at the deposition, and he is currently physically unable to communicate. ([295] at 7-8).

The Court finds Aleman's explanations for Dr. Carbajal's current unwillingness or inability to cooperate highly speculative. Though Dr. Carbajal claims in his January 2017 Statement that he is currently restricted to bed rest, this limitation did not preclude him from sending Defense counsel the January 2017 Statement explaining his absence, and it should not now prevent him from communicating with Defense counsel. As the Government notes, Dr. Carbajal, from the outset, was reluctant to be deposed, claiming that it would be impossible for him to travel to Mexico City. It is also unclear from Dr. Carbajal's January 2017 Statement what the circumstances were surrounding his surgery, and whether the surgery was scheduled or whether it was an emergency. It is also unclear whether and when Dr. Carbajal's health will allow him to reestablish communication with Defense counsel and to ultimately be deposed.[3]

---

[3] Though he claims he is restricted to bed rest, he was able to send his January 2017 Statement shortly after his December 20, 2016, surgery. Because he was able to communicate in January, it stands to reason that, if health issues are precluding him from now communicating, he must be suffering serious complications or his health has otherwise significantly deteriorated.

If, as appears likely, Dr. Carbajal is unwilling to cooperate, legal process in Mexico requires Aleman to file letters rogatory for Mexican judicial assistance, a process that may take a year or more to execute.  (See [299] at 10-11 (citing United States State Department materials)).  The Government claims this delay will cause it to incur additional expenses to hold its material witness in custody, and that it will further impair the Government's case as time passes.  A significant countervailing circumstance is Aleman's requirement that the deposition be conducted in Guerrero, an especially dangerous location in Mexico.

The Court finds that countervailing factors substantially support that taking the deposition would be unjust to the Government, and the Court finds the Magistrate Judge's determination that Aleman failed to meet his burden regarding the third Ramos factor was not contrary to law or clearly erroneous.

Weighing all of the Ramos factors, the Magistrate Judge concluded that Aleman did not meet his burden to demonstrate the "exceptional circumstances" required under Rule 15 to authorize scheduling another deposition of Dr. Carbajal.  The Court finds the Magistrate Judge's determination was not contrary to law or clearly erroneous.  Aleman's Objections are overruled, and his Second Carbajal Motion is denied.

## III. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant Blas Aleman's Objection to Order Concerning Deposition of Dr. Leocadio Carbajal Abonsa [295] is **OVERRULED**.

**IT IS FURTHER ORDERED** that Defendant Blas Alemna's Second Motion to Take Deposition of Dr. Carbajal [287] is **DENIED**.

**SO ORDERED** this 1st day of March, 2017.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

15