# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | 1:08-cr-223-WSD-2 |
| BLAS ALEMAN, | |
| Defendant. | |

## OPINION AND ORDER

This matter is before the Court on Defendant Blas Aleman's ("Aleman") Rule 29 Motion for Acquittal or New Trial [370] ("Motion") and his Supplemented Rule 29 Motion for Acquittal or New Trial [372] ("Supplemented Motion").

I.  **BACKGROUND**

On June 10, 2008, a Grand Jury in the Northern District of Georgia indicted Aleman and four others with conspiracy to possess with the intent to distribute at least five (5) kilogram so cocaine and at least five hundred (500) grams of methamphetamine. The indictment [10] ("Indictment") alleges the conspiracy began at least as early as March 9, 2008, and continued until on or about May 12, 2008.  ([10]).  After being found in Mexico, in March 2016, Aleman was extradited to the United States based upon the charges against him.  ([209]).

During the pre-trial process, in July 2016, Aleman moved, pursuant to Federal Rule of Criminal Procedure 15, for leave to take depositions in Mexico of various alibi witnesses, including Dr. Carbajal, a medical doctor Aleman contends treated him in Mexico during the period of his charged conduct. ([246], [259]-[261]). Magistrate Judge Catherine M. Salinas granted the motion. ([262], [264]). Because of safety concerns, the Magistrate Judge required the depositions be conducted in Mexico City, an approximate six-hour drive from the town in which the witnesses live. (Id.).

On January 10, 2017, counsel for the parties deposed five witnesses in Mexico City. Dr. Carbajal did not appear for his deposition. (See March 1, 2017, Order [303] ("March 1st Order") at 1). On January 29, 2017, Aleman filed a second motion for leave to depose Dr. Carbajal. ([287]). The Magistrate Judge denied the motion, ([294]), and Aleman objected to the denial, ([295]). On March 1, 2017, the Court overruled Aleman's objections, and denied Aleman's second motion to take Dr. Carbajal's deposition. (March 1st Order at 15).

On March 28, 2017, the Court issued its Order [350] ("March 28th Order") on the parties' motions *in limine*. Aleman sought to exclude, among other things, testimony or evidence regarding his 2005 arrest in Florida for methamphetamine trafficking and his subsequent flight from Florida. (March 28th Order at 11-12).

2

The Court found that Aleman's 2005 arrest and flight was intrinsic evidence offered to explain Aleman's secretive conduct in Atlanta during the time period of the charged offense. The Court allowed the evidence to be used for this limited purpose. The Court required the Government to redact from documents relating to the arrest any reference to the crime charged in the 2005 arrest, and required the following limiting instruction be given:

> The Court has allowed evidence that Defendant Aleman was granted bond for an arrest of him in Florida on May 25, 2005 and that, upon release of bond he failed to appear at court proceedings he was required to attend in Florida. This evidence is introduced for a limited purpose. Specifically, you may consider it on the issue whether Defendant was available to commit the crimes with which he is charged in this case and whether he engaged in conduct to avoid detection in engaging in the alleged crimes with which he was charged because he had violated his bond in Florida. You may not speculate on what he was arrested for in Florida and you may not consider the Florida arrest as any evidence that he committed the crime with which he is charged in this case.

(Id. at 14 n.4).[1]

A jury trial was held from April 10, 2017, to April 13, 2017. Defendant moved for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure at the close of the Government's case and again prior to closing arguments. (Trial Tr. [373]-[376] ("Tr.") 452-53, 611). On

---

[1] This limiting instruction was given to the jury when evidence of the Florida arrest was presented. (Tr. 446-47).

3

April 13, 2017, the jury found Aleman guilty of Count 1 of the Indictment. ([366]).[2]

On April 24, 2017, Aleman filed his Motion. The same day, the Court issued an order [371] requiring Aleman to file a corrected brief in support of his Motion to include citations to the trial transcript and record for all references to testimony, arguments, or exhibits admitted at trial. On May 1, 2017, Aleman filed his Supplemented Motion.

Aleman argues (1) he is entitled to a judgment of acquittal because the evidence was insufficient to convict him; (2) he should receive a new trial because the guilty verdict is against the weight of the evidence of his innocence, including the alibi evidence he presented and the impeachment of Ramon Salazar; and (3) he should receive a new trial because the Court erred in allowing the Government to introduce evidence of his 2005 Florida arrest and flight, and in denying Aleman's second motion for leave to depose Dr. Carbajal.

---

[2] The Court refers to additional record evidence where appropriate in its discussion of issues in this Order.

## II. DISCUSSION

### A. Legal Standards

#### 1. Rule 29 Judgment of Acquittal

A motion for acquittal should be granted only "if the evidence is insufficient to sustain a conviction" of the offense charged. Fed. R. Crim. P. 29(a). In considering a Rule 29 motion for judgment of acquittal, the trial court is required to determine whether, viewing all the evidence in the light most favorable to the Government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict, a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt. United States v. O'Keefe, 825 F.2d 314, 319 (11th Cir. 1987). If there is substantial evidence to support a verdict, it is upheld "unless no trier of fact could have found guilt beyond a reasonable doubt." United States v. Pinero, 389 F.3d 1359, 1367 (11th Cir. 2005).

#### 2. Motion for a New Trial

A motion for a new trial must be granted "if the interest of justice so requires." Fed. R. Crim. P. 33(a). In contrast to a Rule 29 motion, on a Rule 33 motion the Court "need not view the evidence in the light most favorable to the verdict," and "may weigh the evidence and consider the credibility of witnesses." United States v. Martinez, 763 F.2d 1297, 1312 (11th Cir. 1985). To set aside a

verdict and grant a new trial, "[t]he evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." Id. at 1313 (citation omitted). Motions for new trial based on the weight of the evidence are not favored; the Eleventh Circuit directs that courts cautiously and sparingly grant them only in "really exceptional cases." Id. at 1313 (internal quotation marks omitted).

B. Analysis

Aleman argues (1) he is entitled to a judgment of acquittal because the evidence was insufficient to convict him; (2) he should receive a new trial because the guilty verdict is against the weight of the evidence of his innocence, including the alibi evidence he presented and the impeachment of Ramon Salazar; and (3) he should receive a new trial because the Court erred in allowing the Government to introduce evidence of his 2005 Florida arrest and flight, and in denying Aleman leave to depose Dr. Carbajal.

1. Motion for Judgment of Acquittal

Aleman argues the evidence was insufficient to convict him on Count 1. To sustain a conviction for conspiring to distribute narcotics, the government must prove that: "(1) an agreement existed between two or more persons to distribute the drugs; (2) the defendant knew of the conspiratorial goal; and (3) the defendant

knowingly joined or participated in the illegal venture." United States v. Castillo, 568 F. App'x 774, 781-82 (11th Cir. 2014) (internal quotation marks omitted) (quoting United States v. Matthews, 168 F.3d 1234, 1245 (11th Cir. 1999)). "The very nature of conspiracy frequently requires that the existence of an agreement be proved by inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme." United States v. Toll, 804 F.3d 1344, 1355-56 (11th Cir. 2015) (internal quotation marks omitted) (quoting United States v. Molina, 443 F.3d 824, 828 (11th Cir. 2006)). "A conspiracy conviction will be upheld . . . when the circumstances surrounding a person's presence at the scene of conspiratorial activity are so obvious that knowledge of its character can be fairly attributed to him, but the inference of participation from presence and association with conspirators alone does not suffice to convict[.]" Id. at 1356 (internal quotation marks and citations omitted). "A defendant can be convicted even if his or her participation in the scheme is 'slight' by comparison to the actions of other co-conspirators." Id. (alterations adopted, internal quotation marks omitted) (quoting United States v. Toler, 144 F.3d 1423, 1428 (11th Cir. 1998)).

The evidence presented at trial of a conspiracy to distribute drugs, and Aleman's involvement in the conspiracy, was substantial:

7

- On March 10, 2008, Aleman and his uncle met with Ramon Salazar to recruit Salazar to become a drug courier. (See Tr. 218, 296- 97; Gov't Ex. 1A). Salazar testified that he had a conversation with Aleman in which they discussed buying a vehicle for Salazar to drive to Mexico, hide cocaine in a hidden compartment or "trap" in the car, and return the vehicle to the United States. (See Tr. 300-301). Aleman told Salazar to bring women with him to look less suspicious when crossing the border. (See Tr. 302). Salazar testified that Aleman offered to pay Salazar $20,000 and to let him keep the vehicle. (Tr. 302-303).

- On March 11, 2008, DEA agents, including Special Agent Mortenson, saw Aleman, his uncle Juan, and "Gordo" at a car dealership where they inspected vehicles. (Tr. 228-29, 232; Gov't Exs. 5A-5K; see also Tr. 305-306 (Salazar identifying Aleman in Exhibit 5H), 399-400 (Alanis-Soto identifying Aleman, Juan Aleman, and Gordo in Exhibit 5G), and 445-46 (Ms. Aviles identifying Aleman in Exhibit 5H)).

- Salazar testified that Aleman instructed him to go to a McDonald's restaurant where Salazar picked up the Nissan Altima that was acquired to accomplish the drug conspiracy. (See Tr. 306-308; Gov't Exhibit 6.) Salazar delivered the Altima to agents who inspected its VIN number. (Tr. 340-43.)

- Filiberto Alanis-Soto testified that, in early 2008, Aleman recruited him to become a drug courier. (Tr. 401-402). Alanis-Soto testified that Aleman told him that he would transport cocaine from Mexico to Atlanta by car. (Tr. 403-04). Aleman offered Alanis-Soto the car or money as payment for trafficking drugs. (Tr. 402-403.)

- After Alanis-Soto agreed to transport drugs for Aleman, Aleman took Alanis-Soto to a meeting at a body shop where Aleman met with Gordo. (Tr. 404). Gordo is the same individual with whom Aleman was photographed at the car dealership on March 11. Gordo later called Alanis-Soto to coordinate the delivery of the Nissan Altima in which drugs were packed and which was driven by Alanis-Soto, selecting the same McDonald's where Salazar first retrieved that vehicle. (Tr. 411-12, 415-420; Gov't Exs. 14, 17.)

- On or about April 29, 2008, Aleman took Alanis-Soto to a car dealership where Aleman bought a car in Alanis-Soto's name. (Tr. 405). The Altima

8

put in Alanis-Soto's name was the same vehicle Aleman previously directed Salazar to pick up at the McDonald's. (Tr. 307-308 (Salazar identifying vehicle in Gov't Ex. 6B), 340-43 (Sergeant Dyar noting VIN number of the Nissan Altima), 405-406 (Alanis-Soto identifying vehicle in Gov't Ex. 6B), 364 (Officer McClendon identifying Nissan Altima and VIN number in Gov't Ex. 15B).

- Alanis-Soto followed Aleman as they drove in separate cars to Altamirano, Mexico, and Aleman was present when Alanis-Soto dropped off the Altima. (Tr. 406-07). About eight or nine days later, Alanis-Soto met Aleman at a hotel on the Mexican side of the United States border, where Aleman returned the car to Alanis-Soto. (Tr. 408.) Defendant told Alanis-Soto drugs were inside the Altima, and said to take the car to Atlanta. (Tr. 408). Aleman also brought two women who would travel with Alanis-Soto to Atlanta. (Tr. 409) Alanis-Soto understood he was to return the Altima to Gordo at the body shop. (Tr. 409). Aleman gave Alanis-Soto $100 before Alanis-Soto departed from the hotel. (Tr. 410).

- On May 9, 2008, Filiberto Alanis-Soto was stopped by Officer McClendon in Mississippi traveling eastbound on Interstate 20 in the Nissan Altima with two women inside. (Tr. 360-61). In a hidden compartment inside the vehicle, law enforcement found 17 bundles of a substance later found to be approximately 10 kilograms of cocaine and 1 kilogram of methamphetamine. (Tr. 364-66, 373-76).

- Salazar identified Aleman in the courtroom as the person who recruited him to transport drugs. (Tr. 304-305). He also identified Aleman in the DEA surveillance photographs. (Tr. 296-97 (Gov't Ex. 1A), 304 (Gov't Ex. 5F), 305-306 (Gov't Ex. 5H)). Salazar knew Aleman from Wauchula, Florida. (Tr. 296).

- Alanis-Soto identified Aleman as his co-conspirator both in court, (Tr. 396), and in the DEA surveillance photographs. (Tr. 398-400 (Gov't Exs. 1A, 5F, 5G, 5K)). Alanis-Soto knew Aleman from El Salitre, Mexico and because Alanis-Soto's daughter was married to Aleman's brother. (Tr. 395, 397-98). Salazar and Alanis-Soto did not know one another. (Tr. 317, 420).

- Aleman's ex-wife, Victoria Aviles, identified Aleman in the DEA surveillance photographs.

9

Viewing this evidence in the light most favorable to the Government and drawing all reasonable inferences and credibility choices in favor of the jury's guilty verdict, see O'Keefe, 825 F.2d at 319, a reasonable trier of fact could find beyond a reasonable doubt that Aleman and others had an agreement to distribute drugs. This same testimony and evidence was also sufficient for the jury to find that Aleman knew of the unlawful conspiracy and knowingly joined in it. The testimony and evidence show Aleman recruited Alanis-Soto and Salazar, selected the car used to transport the drugs, accompanied Alanis-Soto to Mexico, gave the Altima containing the drugs to Alanis-Soto, and instructed Alanis-Soto to drive the car to Atlanta.

Aleman contends that the evidence was insufficient to find that *Aleman* was the person who participated in the conspiracy charged in Count 1. He argues (1) the passage of approximately 9 years between the offense and trial resulted in a change in Aleman's appearance, making it impossible to identify him as a conspirator; (2) the DEA surveillance photographs were taken from too far away to allow a successful identification of him; and (3) the Government witnesses' identifications of Aleman were unreliable. On a motion for judgment of acquittal, the Court is required to view the evidence in the light most favorable to the Government and draw all reasonable inferences and credibility choices in favor of

the jury's verdict. The evidence shows that two separate co-conspirators, Salazar and Alanis-Soto, identified Aleman at trial and in the DEA surveillance photographs. This testimony was corroborated by Aleman's ex-wife, Ms. Aviles, who identified him in the DEA surveillance photographs.

That Aleman claims he undermined Salazar's and Alanis-Soto's credibility on cross-examination does not render their testimony "incredible." Entry of a judgment of acquittal is "not required [merely] because the government's case includes testimony by an array of scoundrels, liars and brigands. The jury was free to disbelieve the two government witnesses whose faults were exhaustively catalogued by the attorneys for [defendants]. . . . By bringing back a verdict of guilty, . . . the jury found that the testimony of [the government's witnesses] was credible. Because the testimony was not incredible as a matter of law, we must accept this determination by the jury." United States v. Hewitt, 863 F.2d 1381, 1385-86 (11th Cir. 1981) (internal quotations marks and citations omitted); see also United States v. Flores, 572 F.3d 1254, 1263 (11th Cir. 2009) ("The witnesses' criminal pasts and prior inconsistent statements were made known to the jury, and the jury was entitled to weigh their testimonies accordingly."). Aleman's Motion for Judgment of Acquittal is denied.

2. Motion for a New Trial

Aleman moves for a new trial on the following grounds (a) the guilty verdict is against the weight of the evidence of his innocence, including the alibi evidence he presented and the impeachment of Salazar; (b) the Court erred in allowing the Government to introduce evidence of his 2005 Florida arrest and flight, and (c) the Court erred in denying Aleman leave to depose Dr. Carbajal. The Court considers these arguments in turn.

a) Weight of the Evidence

Aleman argues that his alibi witnesses, who testified that he was in Mexico from March through May 2008, demonstrate that his conviction was against the weight of the evidence. The Court disagrees, including because many of the witnesses' testimony was not credible. For instance, defendant's ex-girlfriend, Martha Beiza Pedroza, claimed she lived with Aleman in 2008, but she could not identify any specific occasions in 2008 on which she saw him. (Tr. 466).[3] His barber, Fortino Garcia Grandos, also could not remember any specific occasion in

---

[3] Aleman argues that the fact that Pedroza did not remember any specific instances from 2008 "actually reinforces the conclusion that Aleman didn't go anywhere" because she would have remembered an "extraordinary" event such as "Aleman go[ing] to the United States for two months or more." ([380] at 3). The Court finds it is not credible that Pedroza, who claimed to have lived with Aleman, could not recall any specific instance of seeing him in 2008.

2008 when he saw Aleman. (Tr. 517). Eleazar Tapia Venancia, who worked at a health clinic where he claimed Aleman visited frequently in 2008, (Tr. 501-502), also testified that the clinic destroys patient-visit records after three years, and that, in 2011, he remembered seeing documents showing Aleman's visits in 2008, (Tr. 503-504). This testimony is not credible, particularly because Venancia did not provide any reason why he would access, in 2011, Aleman's 2008 clinic visitation records, or why he would remember, in 2017, seeing those records.[4] There is an absence of credible evidence from these witnesses of Aleman's presence in Mexico during the charged period of the conspiracy.

Aleman also relied on documents that purportedly corroborate his alibi defense, including receipts and utility bills for Aleman's Mexico residence, and medical prescriptions in his name purportedly written by Dr. Carbajal. However, the majority of these documents are dated before or after the conspiracy, (see Def.'s Exs. 9, 10, 12-14), and, even if they were dated during the conspiracy, the bills do not establish that Aleman personally paid them.

Aleman next argues that Salazar's testimony was impeached sufficiently to show that the jury's verdict went against the weight of the evidence. He claims

---

[4] Aleman's parents' and current wife's testimony that they saw Aleman continuously in 2008 is undermined by their close personal relationship with him.

Salazar's testimony was incredible because (1) he could not identify Aleman in a driver's license photograph in May 2008, ([357] at 3), and (2) he only identified Aleman in court so the Government would write a favorable letter about him to the Georgia parole board, ([357] at 4). With respect to the first argument, Salazar's failure to identify Aleman in a driver's license photograph in May 2008 is explained in part by the fact that the photograph Salazar was shown was the same size as a driver's official license photograph and was a black-and-white reproduction that had been received by facsimile transmission. (Tr. 284-87, Def.'s Ex. 6). Salazar, at trial, identified Aleman in the DEA surveillance photographs and in the courtroom, and his identification was corroborated by Alanis-Soto and Aviles.

The Court finds that the alibi evidence and Aleman's purported impeachment of Salazar's testimony is not credible and Salazar's identification testimony supported by strong, corroborating evidence shows that Aleman was the individual involved in the conspiracy. Aleman's claimed alibi evdience does not "preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." Marinez, 763 F.2d at 1313. Aleman's Motion for New Trial is denied on this ground.

### b) Evidence of 2005 Florida Arrest and Flight

Aleman next moves for a new trial based upon his argument that the Court erred in allowing the Government to introduce evidence and argument regarding Aleman's 2005 Florida arrest and flight, and that the Government exceeded the limited scope for which the evidence was presented. Aleman argues that the prior arrest warrant evidence was highly prejudicial, and that the jury ignored the Court's limiting instruction and improperly considered the prior arrest and flight evidence. He also argues that the Government misused the evidence.

At trial, the Government introduced testimony from Aviles and two exhibits regarding Aleman's 2005 Florida arrest. Aviles did not identify the nature of the arrest, and the Government redacted from each exhibit any reference to the drug crime for which Aleman was arrested. (Gov't Exs. 29, 30). Aleman did not object to the introduction of the exhibits or Aviles's testimony regarding the 2005 arrest. The Court also gave a limiting instruction to the jury, consistent with the limiting instruction set out in the Court's March 28th Order, to which Aleman did not object. (Tr. 438). Aleman's contention that the jury ignored the limiting instruction and improperly considered the 2005 arrest and flight evidence is conjecture. "Few tenets are more fundamental to our jury trial system than the presumption that juries obey the court's instructions." United States v. Stone,

9 F.3d 934, 938 (11th Cir. 1993). Aleman does not point to any evidence or argument that might indicate the jury improperly considered the 2005 arrest and flight evidence.

The Court also rejects Aleman's argument that the Government misused the 2005 arrest and flight evidence. Aleman argued that, because he had a green card that he could have used to cross the border legally, the absence of border-crossing records showed he was in Mexico in 2008. (Tr. 188). The Government properly used the 2005 arrest evidence to explain why Aleman avoided creating a crossing record and why there was a lack of documentation of his presence in Atlanta. Aleman does not identify any specific testimony or evidence introduced by the Government that improperly exceeded the limited purpose for which the Court allowed the 2005 arrest and flight evidence to be admitted and used by the jury. Aleman's Motion for New Trial is denied on this ground.

        c)       <u>Denial of Motion for Leave to Depose Dr. Carbajal</u>

Finally, Aleman moves for a new trial based upon his argument that the Court erred in denying his second motion for leave to depose Dr. Carbajal. In its March 1, 2017, Order denying Aleman's second motion, the Court found that Dr. Carbajal's testimony, in view of the five other alibi witnesses deposed and the expected testimony of Aleman's parents at trial, was cumulative. The Court also

noted Dr. Carbajal's reluctance to be deposed. Dr. Carbajal failed to appear at his originally-scheduled deposition, then submitted a statement that he missed his deposition due to a surgery. The statement did not explain the circumstances surrounding his surgery, or whether the surgery was scheduled or whether it was an emergency. The Court noted that Aleman's explanations for Dr. Carbajal's unwillingness or inability to cooperate were highly speculative. The Court stated that, "[t]hough Dr. Carbajal claims in his January 2017 Statement that he is currently restricted to bed rest, this limitation did not preclude him from sending Defense counsel the January 2017 Statement explaining his absence, and it should not now prevent him from communicating with Defense counsel. . . . Dr. Carbajal, from the outset, was reluctant to be deposed, claiming that it would be impossible for him to travel to Mexico City." ([303] at 13). The Court found it was likely that Dr. Carbajal was "unwilling to cooperate," and thus that Aleman would need to engage in legal process in Mexico to compel his testimony, a process that could take a year or more. (Id. at 14). There was no reasonable foundation to conclude that Dr. Carbajal would cooperate to schedule or appear for a rescheduled deposition. The Court did not err in denying Aleman's motion for leave to depose Dr. Carbajal.

The Court also finds it is unlikely Dr. Carbajal's testimony would have benefitted Aleman, assuming he was deposed. Dr. Carbajal's failure to appear at his first deposition and his claimed reason for not doing so casts significant doubt on his credibility. That Dr. Carbajal was the Aleman family doctor for over a decade casts further doubt on his credibility.

The Court also finds that Dr. Carbajal's testimony would not have affected the jury's verdict. One of the main reasons Aleman sought to depose Dr. Carbajal was to have him authenticate prescriptions Aleman claimed were written for him. Aleman himself authenticated the prescriptions at trial, and the jury considered them in its deliberations. It is also unlikely that the addition of a ninth alibi witness would have changed the jury's mind. As the Government argues, "Dr. Carbajal's testimony would have been another attempt to establish an alibi that the jury did not believe after hearing it from eight defense witnesses." ([379] at 20).

In sum, the Court finds that this is not one of the "really exceptional cases" that warrants a new trial. See Martinez, 763 F.2d at 1313. Aleman's Motion for New Trial is denied.

## III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant Blas Aleman's Rule 29 Motion for Acquittal or New Trial [370] and his Supplemented Rule 29 Motion for Acquittal or New Trial [372] are **DENIED**.

**SO ORDERED** this 22nd day of June, 2017.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE